JOSEPH M. HUTCHINS

*vs.*

INHABITANTS OF PENOBSCOT.

Hancock.    Opinion May 10, 1921.

*The discovery of the existence of such a fire as is contemplated under R. S., Chap.*
*8, Sec. 29, by one of the selectmen is equivalent to discovery by the whole board*
*within the same jurisdiction. "Discovery" means that a selectman, as*
*a forest fire warden, either by evidence or by evidential facts leading*
*to actual knowledge on his part, knows, or should know, of the*
*existence of a ravaging or threatening forest fire. Negligence*
*on his part may impose liability upon his town.*

By mutual consent of opposite litigants, in virtue of R. S., Chap. 87, Sec. 37, a
Justice of this court may try and determine questions both of fact and of law
at other than term time, and thereupon directly enter judgment.

Under R. S., Chap. 8, Sec. 29, which must be held to relate only to fires in the
woods when generally ravaging property or threatening havoc, — and this
regardless of whether the fire originated by design or by accident,—discovery
of the existence of such a fire by one of the selectmen is equivalent to discovery
by all the selectmen within the same jurisdiction.

The discovery of which the statute speaks is not limited to direct discovery.
The discovery there spoken of means when a selectman, as a forest fire warden,
shall have found out, either by evidence or by evidential facts leading to

actual knowledge on his part, that there is a ravaging or threatening forest fire; when he knows, or, what in law and reason is the same thing, when he ought to know, of the existence of that kind of a fire,—negligence on his part may impose liability upon his town.

The Justice who tried this case found that one of the wardens in the defendant town had actual knowledge of the fire. He further found that that warden was guilty of negligence in not foreseeing to reasonable degree the potentiality of the fire that he left smouldering; in not foreshadowing a probable result of its flaming up; in not reasonably guarding against the danger it could do. The decision of the Justice finally settled the facts. His rulings of law were faultless.

On exceptions by defendant. This action was brought under R. S., Chap. 8, Sec. 29, by the plaintiff to recover of the defendant town, damages resulting to the premises of plaintiff by fire, alleging negligence on the part of the selectmen as fire wardens in permitting the forest fire to reach premises of plaintiff. The case was heard in vacation by a Justice without the intervention of a jury, who rendered judgment for plaintiff in the sum of two hundred dollars. Defendant filed exceptions contending that a single justice was not authorized under the statute to try the case in vacation without a jury; and further that the negligence of one member of the board of selectmen was not sufficient to make the town liable. Exceptions overruled.

Case is stated in the opinion.

*Fellows & Fellows*, for plaintiff.

*Forrest B. Snow*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

DUNN, J. The argument of the defense, so far as it deals with what may be styled the main issue, is not of itself fallacious. Fallacy lies, however, in a gap between that argument and the group of facts and circumstances comprising this plaintiff's case.

A Penobscot man kindled a fire in his pasture to burn brush. He tended to and controlled it on the day that it was set. Apparently it was passive through the following night. Next day the fire became unruly; it spread over about twenty acres of the pasture, and burned several cords of wood that had been cut and piled.

At nightfall it became quiescent.   But at about supper time, alarmed by the burnings of the day, the owner of the pasture had gone to a selectman of the town in which the land is, and requested him to come to the scene.   The selectman did not come.   Nor did suggestion, soon afterward, by the plaintiff, who owned adjacent land, to the same selectman, that the situation merited attention, actuate the latter to the performance of official duty.   But failure then to act, assuming the doing of something to have been incumbent, does not feature here, for the already told reason that nature suppressed activity of the fire during the night hours.   In the morning the selectman went to the place.   Finding the fire, to use his own phrase, "practically out," he left.   When he was gone the fire flamed again.   At one o'clock in the afternoon it was raging.   Leaping high and spreading wide and far, the fire ran from the land where it at first had been, and before the three selectmen, and the other men who had hastened there, had quenched it, damage was done to the plaintiff's pasture and woodland.   Hence the present action against the town, based on a statute which reads:

"The selectmen of towns shall be forest fire wardens therein, and the services of such selectmen acting as said fire wardens, shall be paid for at the same rate as is paid for their other official services. Whenever a fire is discovered, fire wardens shall take such measures as may be necessary for its control and extinguishment.—If any person shall suffer damage from fire in consequence of the negligence or neglect of the selectmen of any town to perform the duties required by this section, such person shall have an action on the case to recover from the town where the fire occurs to the amount of his damages so sustained not to exceed two per cent of the valuation of said town——." R. S., Chap. 8, Sec. 29.

At the request of the parties, a Justice of this court, agreeably to statutory provision, heard and determined the case in vacation. R. S., Chap. 87, Sec. 37.   Judgment was entered for the plaintiff. Defendants now argue two exceptions.   One assumes to challenge jurisdiction of the Justice; the other asserts that the liability creating statute contemplates, not alone the negligence of a single warden, but the concurring neglect of a majority or more of the members of a board of wardens.

There is eccentricity in the first exception in its futile effort to raise a jurisdictional question. Still it need not be disposed of, as becomingly enough it might be, by passing notice of patent infirmity. It may be dignified sufficiently to say that the language of positive law, "Any justice—by agreement of parties, may, at any time or place, try and determine issues of fact and of law submitted to him and render any judgment therein which the court could render if in session" (R. S., Chap. 87, Sec. 37), would fail of all sensible meaning were it to be held that what was done in this case was not within its terms. The statute does not deny right of trial by jury, as defendants say that it does. Nor does it inhibit the waiving of such right. It means exactly what ordinary signification imports, and that is that, by mutual consent of opposite litigants, a Justice of this court, at other than term time, and without the intervention of a jury, may try and determine questions both of fact and of law, and directly enter judgment.

The other exception, although unavailing, is yet of greater consequence. The statute provides for recovery in case of damage suffered by reason of the negligence of the selectmen, after discovery by them of a fire. R. S., Chap. 8, Sec. 29. Literal construction would lead to irrational result. Interpretation, in a statute especially, may be considered in the light of an axiom, which need only be properly put, to become self-evident. The statute must be held to relate only to fires in the woods when generally ravaging property or threatening havoc; and this regardless of whether the fire originated by design or by accident,—by right or by wrong. Yet more pertinently it has relation solely to a forest fire discovered by the selectmen of a town, or by one of them at least, within his township. Phraseology is, "The selectmen of towns shall be forest fire wardens therein." Not that the selectmen of every town shall constitute a board of fire wardens, as defendants would read it; but, speaking for and to the whole State, every selectman shall be a forest fire warden. So read, the knowledge of one is equivalent to knowledge by all, within the same jurisdiction. In principle this is not unlike interpretation of the statute requiring towns to pay expenses necessarily incurred for the relief of paupers by an inhabitant not liable for their support, after notice and request to the overseers. R. S., Chap. 29, Sec. 41. The court held that a needy person might be succored, by another individual at his

town's expense, after notice and request to one member of a board of not less than three overseers. *Newbit* v. *Appleton*, 63 Maine, 491. There it was decided that notice to one overseer was notice to all, and that the duty of the notified one was to communicate to his colleagues that which had come to his knowledge individually. The reasoning is apposite. Having no clerk or records of proceedings, they should interchangeably, said the court, inform each other. Each meanwhile, it might well be added, acting with the alacrity and skill that the exigency of the situation would reasonably require. Assuredly the Legislature never meant that a forest fire should rage, deaf and frantic, knowing not mercy, without effort by the public officers to check its devastating course, until all the members of a board of wardens, after discovering the conflagration, should, in meeting assembled, by major vote, make decision as to what ought be done. That would lack relish of salvation.

Before a town can be made responsible in damages the fire not only must have been discovered by a warden, but a plaintiff must have suffered damage from the fire, after such discovery, in consequence of that official's negligence.

In the parlance of the woods, the word "discovered," as applied to knowledge of the existence of a forest fire, is of technical meaning. It does not necessarily mean to gain a sight of, as the helmsman discovered land to leeward. Nor is it used either in the sense that Columbus discovered America, or that real merit is sure to be discovered, or an expert discovers an error. It does not mean the discovery of what has existed but had not been known, either to men in general or to the discoverer. Perhaps find or ascertain would be more accurate symbols of the idea that the lawmakers intended to express. Find is the most general word for every means of coming to know what was not before certainly known; as, the auditor, when the matter was called to his attention, found the account to be correct. The discovery of which the statute speaks is not limited to direct discovery. The discovery there spoken of means when the warden shall have found out, either by evidence or by evidential facts leading to actual knowledge on his part, that there is a ravaging or threatening forest fire; when he knows, or, what in law and reason is the same thing, when he ought to know, of the existence of that kind of a fire,—negligence on his part may impose liability upon his town.

Negligence is a relative or comparative expression. It may lie in omission or in commission; in the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or in doing what such a person under the circumstances would not have done. It is the lack of ordinary care, taking into account the surrounding or attendant state of affairs. *Moore v. Maine Central Railroad Company*, 106 Maine, 297, 307; *Railroad Company v. Jones*, 95 U. S., 439. A good definition of negligence is given by Judge Cooley. He defines it to be, "The failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." 2 Cooley, Torts, (3rd Ed.) 1324.

Whether the fire wardens discovered the fire, and whether having made the discovery there was negligence, were questions of fact. The justice who tried this case found that one of the wardens had actual knowledge of the fire. He further found that that warden was guilty of negligence in not foreseeing to reasonable degree the potentiality of the fire that he left smouldering; in not foreshadowing a probable result of its flaming up; in not reasonably guarding against the danger it could do. The decision of the Justice finally settled the facts. His rulings of law were faultless.

*Exceptions overruled.*