GEORGE H. GLIDDEN
*vs.*
BATH IRON WORKS CORPORATION

Kennebec.    Opinion, August 14, 1947.

*McLean, Southard & Hunt,* for plaintiff.

*William B. Mahoney,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ., MANSER, A. R. J.

MURCHIE, J. This case presents defendant's exceptions to the overruling of a special demurrer which, after the amendment of the several counts to eliminate allegations of damage which are not proper elements thereof, challenges the sufficiency of the declaration for its failure to allege either a legal duty owed by the defendant to the plaintiff or the violation thereof, or facts from which such duty, or violation, might be inferred. The alternative form of alleging the omissions satisfies the principle recognized in *Chickering* v. *Lincoln County Power Co.,* 118 Me. 414; 108 A. 460; recently affirmed in *Knowles* v. *Wolman,* 141 Me. 120.; 39 A. (2nd) 666, that duty and breach may be pleaded either by forthright assertion (within the principle declared in *Boardman* v. *Creighton et al., infra*) or the averment of facts from which the law will imply them.

The plaintiff is an employee of the defendant. His allegations assert the liability of his employer for damage suffered through disability resulting from the aggravation of a serious heart disease induced, according to the most specific recital in any of his three counts, by hard manual labor and strenuous physical exertion required of him as a helper in defendant's maintenance department. His employment

covered a period of slightly over three months. Consolidating the counts the allegations are that the plaintiff applied to the defendant for employment; that defendant required plaintiff to submit to a physical examination which disclosed that he was suffering from a serious heart disease; that the defendant had knowledge thereof and knew, or should have known, that hard manual labor or physical exertion would endanger and shorten the life of the plaintiff; that the plaintiff, in the exercise of due care, did not know of his heart condition, or that he had any heart ailment whatsoever; and that the defendant owed the plaintiff the duties of informing him of his condition and not requiring him to perform hard manual labor or undergo physical exertion, which duties were breached.

In support of his demurrer the defendant urges the principle which controlled the decision in *Boardman* v. *Creighton et al.*, 95 Me. 154; 49 A. 663; and *Clyne* v. *Holmes*, 61 N. J. L. 358; 39 A. 767, that the mere allegation of a duty is insufficient, i.e., that a pleading must be tested by determining whether the facts alleged impose the duty asserted. Two attempts were made to present a sufficient declaration in the *Boardman* case. In holding the first ineffective (93 Me. 17; 44 A. 121) it was stated, in language substantially identical with that used by the Vermont Court in *Kennedy* v. *Morgan*, 57 Vt. 46, that the allegation of a duty as such amounts to nothing more than "a conclusion of law" on the part of the pleader. The foundation for the special demurrer lies in defendant's claim that the duties alleged to have been breached were not imposed upon it under the facts; that it owed the plaintiff no duty either to warn him that labor or exertion would endanger his health or life, or to limit the work required of him to that which would not cause him injury.

Plaintiff argues that the special demurrer does not point out the specific defect on which the defendant relies, within the rule declared by Chief Justice Mellen in *Ryan* v. *Watson*, 2 Me. 382. See 41 Am. Jur. 451, Par. 226. He recog-

nizes, however, that a special demurrer includes a general one, *State* v. *Peck et al.*, 60 Me. 498; *Mahan* v. *Sutherland et al.*, 73 Me. 158. The contention is not sound. An averment of failure to allege a legal duty, applied to a declaration asserting two stated ones, must be considered as the equivalent of declaring that they are not imposed on the defendant by law under the alleged facts. The point is not material here because the special demurrer, treated as a general one, raises the issue on which the defendant relies in identical manner with the *Chickering* and *Knowles* cases, *supra*, and with *Ouelette* v. *Miller et al.*, 134 Me. 162; 183 A. 341. The declaration in the *Chickering* case carried no specific allegation of either a duty or a breach, but was held sufficient because its factual recitals supplied the deficiencies. That in the *Knowles* case contained allegations of both a duty and a breach, but was held bad because it gave no factual recital laying a proper foundation for the duty specified. In the *Ouelette* case there were allegations of a duty, a breach and the facts relied on to establish the duty. The declaration was held bad because the alleged duty, undoubtedly breached if owned, was not imposed on the defendants by law under the particular facts.

Such is the exact issue here. As counsel for the plaintiff declares in his brief:

> "The basic question * * * is whether * * * the Iron Works owed Glidden a duty to inform him of his heart disease, or a duty not to hire him as a manual laborer, or a duty not to require hard work of him."

The declaration carries no allegation of a duty not to hire, but we see no essential difference between that and the alleged duty not to require hard manual labor or physical exertion. If a greater coverage is intended, and plaintiff is urging the adoption of a rule of law that an employer of manual laborers owes a duty to one seeking employment not to hire him if he is afflicted with a serious heart disease, the statement of the Alabama Court in *Tennessee Coal,*

28

*Iron & R. Co.* v. *Moody,* 192 Ala. 364; 68 So. 274, seems pertinent:

> "Nor would the imposition of liability * * * be either politic or humane * * * since it would * result in depriving of a livelihood many afflicted persons who have no choice but to labor * * *."

On the present declaration the claim to recovery on this ground might be dismissed as not alleged but we enter the field of *dictum* frankly to approve the quoted comment of the Alabama Court as applicable to the present facts. We deem it unwise to establish the principle, never adopted anywhere so far as we are aware, that an employer of labor owes a person seeking work the duty not to hire him if he is unfit for the labor he wishes to undertake.

We treat next of the alleged duty not to require hard manual labor or physical exertion. On that basis the case is one of novel impression in this jurisdiction. The plaintiff cites us to decisions in Mississippi and Missouri where an employer has been held liable for requiring physical labor in excess of the capacity of an employee. *Blue Bell Globe Mfg. Co., Inc.* v. *Lewis,* 27 So. (2nd) 900; *Hamilton* v. *Standard Oil Co. of Indiana et al.,* 323 Mo. 531; 19 S. W. (2nd) 679. To the contrary are the *Tennessee Coal* case, *supra,* and *Crowley* v. *Appleton,* 148 Mass. 98; 18 N. E. 675. The plaintiff seeks to minimize the force of these decisions by noting that the former was decided on the authority of the latter; that the writer of the opinion in that latter gave no explanation or authority for the principle he declared, but pronounced a mere *ipse dixit;* and that the Missouri Court in the *Hamilton* case, *supra,* dismissed both with the comment "The rule is otherwise in Missouri." Examination of the Mississippi and Missouri cases shows a ground for liability which goes beyond the mere requiring of excessive labor. In each of them the employee had the assurance of his employer that the work required of him would do him no injury. In the Mississippi case there was the added feature that the employee was threatened with discharge if

the work assigned was not performed. In the Missouri case he had been assured that nothing but light work would be required of him. If these cases stand for the principle that employers are liable to unfit employees for requiring the kind of labor they have undertaken to perform, without reference to any assurance given them that they are fit, we are not disposed to follow them.

The declaration in the instant case provides a clear basis for distinction between the present facts and those presented in the *Tennessee Coal* case, *supra*. The opinion therein makes it apparent that the employee involved knew his own condition, whereas it is alleged here that he did not know it in the exercise of due care. It was there stated that:

> "The reported cases present only a few instances in which a servant has sought to recover from a master for injuries which have resulted primarily from the physical unfitness of the servant for the work which he had undertaken to do."

This is such an instance. We think the Massachusetts Court in the *Crowley* case, *supra*, pointed to the *sine qua non* for recovery under those circumstances, namely, that there should be none without allegation and proof that the master knew of the servant's ignorance of his own unfitness. See *Murinelli* v. *T. Stuart & Son Co., infra.*

In declaring upon a duty of the defendant to inform him that he was suffering from a serious heart disease the plaintiff seeks to bring his case within a recognized principle of law, applicable to the contracting of occupational diseases and the spread of contagious or infectious ones. As applied to contagious or infectious diseases the principle gives no color of support to the present action. It is of much broader application than to the single relationship of employer and employee, but it operates in a narrower field that is well-defined in the statement of the Massachusetts Court in *Minor* v. *Sharon,* 112 Mass. 477; 17 Am. Rep. 122. There

the parties were a landlord and his tenant and the disease involved smallpox. The court said:

> "the defendant knew that the tenement was so infected as to endanger the health and life of any person who might occupy it. It was a plain duty of humanity on his part to inform the plaintiff of this fact, or to refrain from leasing it until he had used proper means to disinfect it."

Additional instances where the principle has been applied, including such a relationship as innkeeper and guest and such a disease as typhoid, are *Gilbert* v. *Hoffman,* 66 Iowa 205; 55 Am. Rep. 263, and *Kliegel* v. *Aitken,* 94 Wis. 432, 69 N. W. 67; 35 L. R. A. 249; 59 Am. St. Rep. 901. See also *Missouri, Kansas & Texas Ry. Co.* v. *Wood,* 95 Tex. 223; 66 S. W. 449; 56 L. R. A. 592; 93 Am. St. Rep. 834. An annotation following the last designated report of that case cites numerous decisions holding parties liable for the spread of contagious and infectious diseases. The principle is not applicable to a heart ailment.

The occupational disease cases are controlled by the same principle of a duty to warn, or inform. It applies, in the limited field of the employer-employee relationship, to employment hazards known to the former and not to the later. This court declared in *Spence* v. *Bath Iron Works Corp.,* 140 Me. 287; 37 A. (2nd) 174, that it:

> "would not hesitate to permit recovery for an occupational disease on proper proof that an employer had negligently failed to warn of a risk of disease known to him which was neither apparent nor known to his employee." ·

The disease to which that process related was typically occupational. It was a dermal affection contracted, as the jury found, as the direct result of working on degaussing cables, a risk common to every worker so engaged. Definitions of occupational disease are numerous and varied, but regardless of the terms used each and all of them define ailments to which workers are subject without reference to

their individual health. Francis H. Bohlen, writing in the Columbia Law Review in 1914 (14 Col. Law Rev. 563), said that in its usual sense occupational disease meant a disease:

> "contracted by slow infection or resulting gradually from a constant subjection to unhealthful work conditions."

Decided cases defining the term to the same general effect are numerous. Among them we note *Goldberg* v. *954 Marcy Avenue Corp.*, 276 N. Y. 313, 12 N. E. (2nd) 311, and *Gay* v. *Hocking Coal Co.*, 184 Iowa 949, 169 N. W. 360. Annotations in 6 A. L. R. 355; 99 A. L. R. 613 and 105 A. L. R. 80 cite many occupational disease cases both under statutes and at common law, including the *Gay* case, *supra*. There is no point in reviewing them here, but reference to a decision of the Washington Court, not included therein seems pertinent. In *Seattle Can Co.* v. *Department of Labor & Industries of Washington et al.*, 147 Wash. 303; 265 Pac. 739, the definition given is:

> "An occupational disease is one which is due wholly to causes and conditions which are normal and constantly present and characteristic of the particular occupation; that is, those things which science and industry have not yet learned how to eliminate. Every worker in every plant of the same industry is alike constantly exposed to the danger of contracting a particular occupational disease."

The disease for which recovery was sought in *Spence* v. *Bath Iron Works Corp.*, *supra*, brought the case squarely within the scope of that definition. The result was controlled by evidence rulings, but recognition was accorded to the basic principle of a duty to warn. Earlier decisions of this court controlled by that principle were cited, covering a wider range than occupational diseases and including dangers confronting inexperienced and excusably ignorant employees concerning matters having no connection with disease. In *Colfer* v. *Best*, 110 Me. 465; 86 A. 1053, and *Muri-*

*nelli* v. *T. Stuart & Son Co.*, 117 Me. 87; 102 A. 824, this court has declared it essential, for an employee to maintain an action for his employer's failure to warn (or instruct) him, that the master knew, or ought to have known, of his employee's ignorance. Instruction, rather than warning, is the duty applicable to cases of the type where disease is not involved. The more complete statement of this fundamental is contained in the *Murinelli* case where Labatt's Master and Servant, 2nd Edition, Section 1141, is cited as authority. There it is said that one essential is:

> "that the master knew, or ought to have known, that the plaintiff was * * ignorant of the risk, and was * * * exposed to an abnormal hazard, over and above those which he was presumed to contemplate as incidents of his employment."

That is the true foundation for the decision in the *Crowley* case, *supra*.

The broad general principle on which the plaintiff relies is undoubted. It is stated in 45 C. J. 842, Par. 260, in the words:

> "where a person is placed in such a position with regard to another that it is obvious that, if he does not use due care * * * he will cause injury to that person, the duty at once arises to exercise care commensurate with the situation * * *."

To the same general effect is the definition of negligence given in Cooley on Torts, Vol. 2, Third Edition, 1324, quoted with approval in *Hutchins* v. *Inhabitants of Penobscot*, 120 Me. 281, 113 A. 618:

> "the failure to observe, for the protection of * * * another * that degree of care * * * which the circumstances justly demand, whereby such other * suffers injury."

The plaintiff cites us to that case which has no remote connection with the employer-employee relationship, and to other decisions of this court where negligence and due care, the opposites of each other as stated in *Raymond* v. *Port-*

*land Railroad Co.,* 100 Me. 529; 62 A. 602; 3 L. R. A. (N. S.) 94, are defined in very broad and general terms. The difficulty comes in the application of the present facts to those decisions and the definitions given in Corpus Juris and by Judge Cooley. Assuming the knowledge of the defendant not only of the condition of the plaintiff but of his own ignorance of that condition, the circumstances might require a degree of care altogether greater than would otherwise be the fact. The duty to warn of dangers which are neither known nor apparent is undoubted (see the cases already cited), but personal condition is presumptively apparent.

> "The unfit servant is almost always aware of his unfitness."

Labatt, Master and Servant, Section 180. Plaintiff's declaration lays the groundwork for rebutting the presumption by alleging that he did not know his own condition. It does not allege that defendant knew, or should have known, that fact. It is a fact essential to his right of recovery. The rules of pleading require that a declaration contain a clear and distinct averment of every fact essential to constitute the cause of action. *Foster* v. *Beaty,* 1 Me. 304; *Ferguson* v. *National Shoemakers,* 108 Me. 189; 79 A. 469. Absence of allegation that the defendant knew, or should have known, that the plaintiff did not know of his own condition makes the declaration defective.

*Exceptions sustained.*